# In the United States Court of Federal Claims

No. 19-1615
(Filed Under Seal: June 22, 2023)
Reissued: July 18, 2023[1]

|  |  |
|---|---|
| THE GOVERNMENT OF GREECE HELLENIC AIR FORCE, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| Defendant. | ) ) |

*Thomas M. Kollin*, The Kollin Firm, LLC, Beavercreek, OH, for plaintiff.

*Galina I. Fomenkova*, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

**OPINION AND ORDER**

**SMITH, Senior Judge**

  Before the Court is defendant's Motion to Dismiss plaintiff's Complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, the Court grants defendant's Motion to Dismiss under RCFC 12(b)(1).

**I. Background**

  **A. Facts**

  Plaintiff is the Hellenic Air Force of the country of Greece ("HAF"). Defendant is the United States Government, acting through the United States Air Force and the Defense Security Cooperation Agency (referred to collectively as the "U.S. Government" or "government"). In 1999, plaintiff entered a contract with the government, under Letter of Offer and Acceptance GR-D-QBM ("LOA" or "GR-D-QBM"), for the procurement of military grade surveillance cameras and related equipment for RF-4 aircraft. *See* Complaint at 8, ECF No. 1 [hereinafter

---

[1] An unredacted version of this opinion was issued under seal on June 22, 2023. The parties were given an opportunity to propose redactions, but no such proposals were made.

Compl.]; *see also* Plaintiff's Exhibit 1 [hereinafter PX]. The LOA had a total cost of $23,369,732.00. PX 1 at 1.

The LOA stated that the government would provide plaintiff with the requested cameras through a contract with Recon/Optical, Inc. ("Recon"). PX 1 at 7, Note 5. Accordingly, the government entered a contract with Recon for the goods identified in the LOA. PX 1 at 7, Note 5. After award, HAF requested certain changes in the LOA regarding the camera's focal length and recorder to meet its requirements. *See* PX 5 (stating that a change to the focal length of the dual band cameras to 84 inches would "better our requirements"). Thereafter, the parties and Recon discussed various changes to the LOA. *See* PX 6–11. Even with these changes, plaintiff experienced various functionality and delivery issues. *See* PX 11 at 2 (stating that the "camera has not yet successfully concluded the engineering flights, the quality of the so far produced photos is unacceptable and severe technical problems are confronted by the company in relation to the installation and operation of the camera"). As a result, the government assembled an engineering Red Team to review the various issues. *See* PX 12. On December 2, 2004, the Red Team notified plaintiff that it found "significant issues" with the program in areas such as "systems engineering, camera design, [and] systems integration." PX 12 at 1. The Red Team advised plaintiff that the warranty and Supply Deficiency Report ("SDR") process would enable plaintiff to resolve these issues within its existing contract. PX 12 at 2.

By 2006, Recon had fulfilled all Contract Line Item Numbers ("CLINs") in its contract with the government, except for CLIN 0003. *See* Defendant's Motion to Dismiss, Appendix at A1 [hereinafter App.] (stating that "[a]ll items on the [U.S. Government] contract have been billed for and accepted by [the U.S. Government], except for CLIN 0003"). CLIN 0003 was for an "upgrade of KS-127A Film Camera System, P/N 1690-1100, to visible EO/Film sensor." App. at A1. On September 18, 2006, plaintiff requested that the government terminate CLIN 0003. App. at A1. In response, the government partially terminated CLIN 0003 and settled on $389,523.59 for the work already performed under that CLIN. App. at A1. As a result, the government "deobligated the remainder of the CLIN 00[0]3 costs from the Recon contract in the amount of $1,917,304.41 and returned that amount to Greece." Defendant's Motion to Dismiss at 4, ECF No. 9 [hereinafter Def.'s MTD].

On April 10, 2008, the government closed out its contract with Recon. *See* App. at A1 (informing plaintiff that "all contractual actions" are complete). On August 25, 2008, the government sent plaintiff notice that CLINs 001–006 were complete and that the government would "start case closure as soon as possible." App. at A2. In that letter, the government instructed plaintiff that all SDRs "must be submitted within one year of shipment except when non-receipt of the entire shipment is involved." App. at A2. On July 29, 2009, the government denied plaintiff's SDRs because (1) the government said the issues with the cameras were "latent defects" of which plaintiff was on notice as early as 2005, and (2) the SDRs were submitted more than one year after shipment. *See* App. at A5.

On July 31, 2015, plaintiff requested the government to reopen the LOA. *See* Compl. at 6. On May 24, 2016, the government declined to reopen the LOA. *See* PX 16. The government stated that it already paid plaintiff over $2,000,000.00 to compensate for shortcomings within the camera program and terminated the contract after plaintiff requested "cancellation of camera

film-based upgrades." PX 16 (referencing a letter from April 24, 2008, in which the government notified plaintiff of the Recon contract close-out); *see also* App. at A1. Importantly, the government notified plaintiff that it will not "revisit or reopen the case for further investigation." PX 16.

On September 14, 2016, plaintiff appealed the government's decision to deny its claim to reopen the LOA with the Armed Services Board of Contract Appeals ("ASBCA"). *Appeal of -- Hellenic Air Force*, ASBCA No. 60802, 17-1 BCA (CCH) ¶ 36821. Plaintiff filed its appeal with the ASBCA stating that it "invokes the Board's jurisdiction pursuant to the Contract Disputes Act (CDA)." *Id.* at 2 (citing 41 U.S.C. §§ 7107–7109). On August 2, 2017, the ASBCA dismissed plaintiff's claim for lack of jurisdiction. *See id.* at 2 (citing *Rig Masters, Inc.*, ASBCA No. 52891, 01-2 BCA ¶ 31,468 at 155,379) (holding that plaintiff's request for the LOA to be reopened and/or reinstated is a request for injunctive relief, and the ASBCA "does not possess jurisdiction to entertain a matter that seeks only injunctive relief"). On August 17, 2018, plaintiff submitted a certified claim for a sum certain to the Contracting Officer for $21,745,394.71, plus interest. Compl. at 8.

### B. Procedural History

On October 16, 2019, plaintiff filed its Complaint with this Court. *See generally* Compl. Specifically, plaintiff brings this action against the government for breach of contract, violation of federal procurement law, breach of duty of good faith and fair dealing, and unjust enrichment. *See id.* at 8–15. On February 13, 2020, defendant filed its Motion to Dismiss. *See generally* Def.'s MTD. On July 26, 2022, plaintiff filed its Response to defendant's Motion. *See generally* Plaintiff's Response to Defendant's Motion to Dismiss, ECF No. 18 [hereinafter Pl.'s Resp.]. On August 26, 2022, defendant filed its Reply to plaintiff's Response. *See generally* Defendant's Reply in Support of its Motion to Dismiss, ECF No. 19 [hereinafter Def.'s Reply]. On September 8, 2022, plaintiff filed a motion for leave to file a sur-reply to Defendant's Motion to Dismiss. *See* Plaintiff's Motion for Leave to File Sur-Reply, ECF No. 20. On October 6, 2022, the Court granted plaintiff's Motion and accepted plaintiff's Sur-Reply, ECF No. 20, Exhibit 1, into the record. *See* October 6, 2022 Order, ECF No. 22. On November 21, 2022, the Court held Oral Argument. Defendant's Motion to Dismiss is fully briefed and ripe for review.

## II. Standard of Review

### A. RCFC 12(b)(1)

Defendant brings forth its Motion to Dismiss under RCFC 12(b)(1) for lack of subject-matter jurisdiction. *See generally* Def.'s MTD.[2] Whether this Court has subject-matter jurisdiction to hear the merits of a case is a "threshold matter" and a requirement which "springs from the nature and limits of the judicial power of the United States." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To determine whether this Court has subject-matter

---

[2] Defendant makes three main arguments in its dismissal under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Defendant's Motion to Dismiss, ECF No. 9. However, the Court need not address defendant's alternative arguments because defendant's claim accrual argument under RCFC 12(b)(1) is sufficient to establish that plaintiff's Complaint lacks subject-matter jurisdiction.

jurisdiction, it "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration*, *Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). If plaintiff's claim is challenged for lack of jurisdiction, then plaintiff must "show[] that he is properly in court" through "competent proof." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). Plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citing *Zunamon v. Brown*, 418 F.2d 883, 886 (8th Cir. 1969)). If the Court determines, at any time, that it lacks subject-matter jurisdiction, it must dismiss the action. *See* R. Ct. Fed. Cl. 12(h)(3).

### III.    Discussion

#### A.    Claim Accrual

Defendant argues that the Court should dismiss plaintiff's claim for lack of jurisdiction because it was filed out-of-time. *See* Def.'s MTD at 8–12. Specifically, defendant argues that claims must be filed within six years from when the claim first accrues. *See id.* at 8–9. As such, defendant states that for plaintiff's Complaint to have been timely filed, plaintiff's claims "must have accrued no earlier than October 17, 2013"—six years prior to when plaintiff filed its Complaint with this Court on October 16, 2019. *See id.* at 9. Defendant argues that plaintiff's claim accrued when the nature of the defective cameras was known to the parties in December 2004, but no later than May 2006—the date plaintiff received the cameras. *See id.* at 11.

Plaintiff responds that the accrual period for its claim was suspended until it "knew or should have known that the claim existed." *See* Pl.'s Resp. at 12–13 (citing *Martinez v. United States*, 333 F.3d 1295, 1319 (Fed. Cir. 2003)).[3] Plaintiff argues that it was never notified, nor did it give its consent for the program to officially close. *See id.* at 14 (citing Pl.'s Resp., Exhibit 1 (Affidavit of Maj. Lykouris)) ("At no time were HAF ranking and authority officials ever told the GR-D-QBM had been officially closed."). Instead, plaintiff argues that in 2010, the government gave the impression at a Security Assistance Management Review meeting that the program needed "attention" to resolve pending issues. *See id.* (citing Pl.'s Resp., Exhibit 3). Plaintiff further argues that billing statements or the common practice of drawing down are not reasonable notice that the program was closing. *See id.* at 14–15. As such, plaintiff argues that they "could not have reasonably known GR-D-QBM was in closure status and, when they became aware of closure, they properly and timely filed this instant case." *See id.* at 16.

For this Court to have jurisdiction, claims must be filed within six years after the claim first accrues. 28 U.S.C. § 2501. This statute of limitations rule is an "'express limitation on the Tucker Act's waiver of sovereign immunity', and consequently may not be waived by either [this Court] or the parties." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1376–77 (Fed. Cir. 1998) (quoting *Hart v. United States*, 910 F.2d 815, 817–19 (Fed Cir. 1990)). Plaintiff has

---

[3]     The Court notes that plaintiff's response brief does not provide a complete case citation for *Martinez v. United States*; however, the Court construes the given case as *Martinez v. United States,* 333 F.3d 1295, 1319 (Fed. Cir. 2003). *See generally* Plaintiff's Response to Defendant's Motion to Dismiss at 12–16, ECF No. 18 [hereinafter Pl.'s Resp.].

the burden to demonstrate its "jurisdictional timeliness." *See id.* at 1377 (citing *McNutt*, 298 U.S. at 189). In a breach of contract claim, a claim "accrues when the breach occurs." *See id.* (quoting *Manufacturers Aircraft Ass'n v. United States*, 77 Ct. Cl. 481, 523 (1933)). Specifically, the claim accrues when "all the events which fix the government's alleged liability have occurred *and* the plaintiff was or should have been aware of their existence." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988) (emphasis in original) (citing *Kinsey v. United States*, 852 F.2d 556, 557 n.* (Fed. Cir. 1988)).

      Here, the Complaint was filed on October 16, 2019. *See* Compl.; *see also* R. Ct. Fed. Cl. 3 ("A civil action is commenced by filing a complaint with the court."). Within the time limitations of 28 U.S.C. § 2501, the claim must have accrued no earlier than six years prior to that date to be timely. If plaintiff's claim accrued earlier than six years prior, it would be untimely; however, instances such as "accrual suspension" may extend this time period until the claimant "knew or should have known that the claim existed." *See Martinez*, 333 F.3d at 1319. Relevant here, plaintiff puts forth an "accrual suspension" argument which is "strictly and narrowly applied" by the Federal Circuit. *See id.* (internal citation omitted).[4] For accrual suspension to apply, plaintiff must demonstrate that defendant "concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date." *Id.* (citing *Welcker v. United States*, 752 F.2d 1577, 1580 (Fed. Cir. 1985)); *see also Catawba Indian Tribe of S.C. v. United States*, 982 F.2d 1564, 1571 (Fed. Cir. 1993) (stating that it is not enough to be "ignoran[t] of rights which should be known;" accrual suspension requires plaintiff to demonstrate that "defendant has concealed its acts with the result that plaintiff was unaware of their existence, or it must show that its injury was 'inherently unknowable' at the accrual date" (internal citations omitted)).

      Plaintiff makes various arguments that it is entitled to "accrual suspension" which fall short. Plaintiff argues that its ranking and authoritative officials were not notified that the LOA was closed. *See* Pl.'s Resp. at 13–14 ("At no time were [plaintiff's] ranking and authority officials ever told the GR-D-QBM had been officially closed." (citing Pl.'s Resp., Exhibit 1)). However, on April 10, 2008, defendant closed out the contract with Recon. App. at A1. On April 24, 2008, defendant notified plaintiff that it was closing out the LOA. App. at A1 (stating that the "final DD250 for the contract was signed 10 April 2008, which completes all contractual actions"). Importantly, the April 24, 2008 Notice informed plaintiff that "Contract F42630-00-C-0163 is being sent to closeout." App. at A1. Additionally, on August 25, 2008, plaintiff was sent another notice which indicated that all CLINs under the LOA were "complete" and that defendant intended to "start case closure as soon as possible." App. at A2. Plaintiff's brief acknowledges receiving this notice and states that it "object[s] and continually contest[s]" the SDRs "as late as 2011." *See* Pl.'s Resp. at 14. Thus, accrual suspension does not apply because plaintiff has not demonstrated that defendant concealed its acts or that the "injury was inherently unknowable as of the accrual date." *See Martinez*, 333 F.3d at 1319. To the contrary, the record demonstrates that the U.S. Government continually sent plaintiff notices that the LOA would be closed. *See* App. at A1, A2.

---

[4]     Plaintiff clarifies that it is not arguing for equitable tolling. Pl.'s Resp. at 12–16; *see also Martinez*, 333 F.3d at 1319 (stating that the "accrual" argument is "distinct from the question whether equitable tolling is available under [section 2501], although the term 'tolling' is sometimes used in describing the rule"). Thus, the Court will not address the applicability of equitable tolling under 28 U.S.C. § 2501.

Without accrual suspension, there is still the question of when plaintiff's claim accrued and whether plaintiff's Complaint in this Court was filed out of time. "A claim accrues 'against the government . . . when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action.'" *Jordan v. United States*, 158 Fed. Cl. 440, 448 (2022) (citing *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1381 (Fed. Cir. 2012)). Determining whether "all the events have occurred which fix [] liability" is an objective standard and one in which plaintiff is not required to "possess actual knowledge of all the relevant facts" for the claim to accrue. *Id*. In this case, the August 25, 2008 Notice demonstrates that defendant informed plaintiff that SDRs must be submitted "within one year of shipment or billing, whichever is later." App. at A2. Indeed, plaintiff submitted SDRs recounting various issues with the delivered product. *See* App. at A5. On July 29, 2009, defendant denied those SDRs as untimely because they were submitted outside the one-year limit. *See* App. at A5 (stating that the "SDRs are denied since the defects cannot be considered latent and the SDRs were not submitted with the one-year time frame"). Accordingly, as late as July 29, 2009, "all the events [had] occurred which fix the alleged liability" so that plaintiff could proceed with contesting defendant's denial of SDRs A0015, A0016, A0017, A0018, and A0019. *See Hopland Band of Pomo Indians*, 855 F.2d at 1577 (internal citations omitted).

In any event, whether the claim accrued on April 24, 2008 (Close-out Notice); on August 25, 2008 (Supply/Services Completion Notice); or "as late as 2011," plaintiff's claim is untimely as its claim accrued earlier than October 2013—six years before plaintiff filed its Complaint in this Court. *See* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). Therefore, this Court lacks subject-matter jurisdiction to hear the merits of plaintiff's Complaint and must dismiss this case. The Court need not address defendant's alternative arguments in support of dismissal.

## IV.     Conclusion

For the reasons set forth above, defendant's Motion to Dismiss under Rule 12(b)(1) is hereby **GRANTED**. Defendant's Motion to suspend the deadline to respond to plaintiff's Amended Complaint, ECF No. 25, is hereby **DENIED AS MOOT**. The Clerk is directed to enter judgment in favor of defendant, consistent with this opinion, with each side to bear its own costs.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge